**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

THOMAS B. DRUMMOND,
Petitioner-Appellant,

v.                                              No. 97-2106

COMMISSIONER OF INTERNAL REVENUE,
Respondent-Appellee.

Appeal from the United States Tax Court.
(Tax Ct. No. 94-16958)

Argued: April 7, 1998

Decided: July 15, 1998

Before WIDENER and LUTTIG, Circuit Judges, and
CHAMBERS, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed in part and reversed in part by unpublished per curiam opin-
ion.

_____

**COUNSEL**

**ARGUED:** Karen Mary Kennedy, JAMES P. CAMPBELL & ASSO-
CIATES, P.C., Leesburg, Virginia, for Appellant. Annette Marie
Wietecha, Tax Division, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Mark E.
Kellogg, KELLOGG, KREBS & MORAN, Fairfax, Virginia, for
Appellant. Loretta C. Argrett, Assistant Attorney General, Gilbert S.
Rothenberg, Tax Division, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Petitioner-appellant Thomas Drummond appeals a decision of the United States Tax Court upholding the Internal Revenue Service's assessment of income tax deficiencies and accuracy-related penalties on his tax returns for 1989, 1990, and 1991. For the reasons stated herein, we affirm in part and reverse in part.

Beginning in 1988, Drummond purchased a series of thoroughbred horses to train for dressage and jumping, cross country riding, or both. Drummond's stated goal was to train and sell accomplished show horses. Although Drummond practiced psychology, he adjusted his work schedule to allow him to spend between 15 and 18 hours a week with his horses, and engaged the assistance of professionals to assist with the horses' training. Drummond experienced numerous setbacks, however, and had, at the time of this appeal, been unable to sell any of the horses he had trained.[1]

In addition to his involvement with horses, Drummond purchased a small herd of cattle in 1990. Drummond's stated purpose was to expand the herd and use it to manage his horses' pasture, see J.A. at 165, though, at the time of this appeal, he had not yet done so. Drummond has, however, sold the calves produced by the herd each year for modest amounts.

On his tax returns, Drummond has treated his horse and cattle operations as a single enterprise, motivated by the desire for profit.

_____

[1] Subsequent to the tax years at issue in this case, Drummond did succeed in selling a horse for $30,000 that he had purchased, one month earlier, for $10,000. The profit realized by Drummond in this venture, however, appears unrelated to any training given the horse by Drummond.

2

Although he has made some money, primarily from the cattle, his losses have in every year exceeded his profits. In determining his net income each year, Drummond has deducted the net losses from his horse and cattle operations from income received from other sources.

The instant litigation arose when the IRS determined deficiencies for Drummond's 1989, 1990, and 1991 tax returns, and also assessed certain accuracy-related penalties against him. Although the deficiencies included a variety of matters no longer at issue in this case, the heart of the matter, for purposes of this appeal, was that the IRS considered Drummond's horse and cattle operations to constitute only hobbies, rather than activities engaged in for profit. Because hobby losses can be offset only against income derived from the same activity, the IRS maintained that Drummond erred in deducting the net losses from the horse and cattle operations from his other income. The IRS also insisted that Drummond's horse and cattle operations were separate activities, and that the losses from the horse operations therefore could not be deducted even to the extent of the profits from the cattle operations. Finally, the IRS assessed penalties against Drummond for negligence and for substantial underpayment of his income taxes.

Drummond challenged these determinations in tax court. The tax court found, inter alia, that the horse and cattle operations constituted separate activities, that Drummond had engaged in neither out of a desire for profit, and that the IRS had properly assessed certain penalties against him for substantially understating his income. In finding that Drummond's activities were not conducted for profit, the tax court relied primarily on (1) Drummond's lack of formal training, (2) his failure to keep careful records or otherwise to conduct the activities in a business-like manner, and (3) the consistent losses Drummond incurred, and was apparently able to afford because of the income available to him from other sources. In upholding the penalties, the tax court rejected Drummond's defense of good faith, reasonable reliance on professional advice, on the grounds that Drummond had failed to prove that he had fully disclosed all of the information to his tax advisor necessary for the advisor to render competent professional advice, and therefore had failed to prove that his reliance on the advisor's advice was reasonable.

3

We have carefully reviewed the tax court's opinion, the parties' submissions in this court, and the relevant legal authorities, and have had the benefit of oral argument. Although we believe it is a close question, we cannot conclude that the tax court's findings as to the nature of, and the relationship between, Drummond's horse and cattle activities were clearly erroneous, and accordingly we affirm this part of the tax court's decision.

We reverse, however, that court's rejection of Drummond's defense of good-faith, reasonable reliance on professional advice. The uncontroverted testimony of Drummond's tax advisor established, inter alia, that he knew about Drummond's activities and discussed them with Drummond regularly, J.A. at 73, that he was impressed with the amount of resources -- especially time-- that Drummond spent on his horses, J.A. at 83-84, that he knew of the payments made to, and the reputations of, those with whom Drummond was dealing, J.A. at 85, and that he concurred in the judgment that the activity could properly be reported as one engaged in for profit, J.A. at 95. Neither the tax court nor the Internal Revenue Service has cited any evidence establishing that Drummond did not fully disclose the nature of his horse and cattle operations to the tax advisor, or that the accountant did not have adequate information upon which to base his professional judgment. Accordingly, we hold the tax court's finding that Drummond failed to establish reasonable reliance clearly erroneous.**2**

_____

**2** Drummond also appeals the tax court's decision upholding accuracy-related penalties relating to his characterization of a gain he realized from the sale of a drawing, and for excessive deductions taken for Drummond's contributions to his pension plan. As to both issues the tax court rejected Drummond's defense of good faith, reasonable reliance on professional advice. As for the characterization of the gain from the sale of the drawing, we affirm the decision of the tax court. Drummond's tax advisor testified that he told Drummond that he could not claim the gain as income from business unless he continued to buy and sell drawings, see J.A. at 88-90. Despite this advice, Drummond so reported the gain but did not continue to buy and sell drawings. Accordingly, the tax court's rejection of Drummond's defense of good faith reliance was not clearly erroneous.

As for the question of the deductions attributable to the pension contributions, we reverse the decision of the tax court. Although that court

4

For the foregoing reasons, the judgment of the tax court is affirmed in part and reversed in part.

AFFIRMED IN PART, REVERSED IN PART

_____

found that Drummond failed to prove he had fully described the nature of his pension plan to his tax advisor, this finding cannot be reconciled with the record. Although the advisor testified that he did not _initially_ know what kind of pension plan Drummond had, J.A. at 78, he also testified that he later jointly determined with Drummond that Drummond's pension plan supported the deduction that was taken, J.A. at 81.

5